JASON M. WUCETICH
(STATE BAR NO. 222113)
jason@wukolaw.com
DIMITRIOS V. KOROVILAS
(STATE BAR NO. 247230)
dimitri@wukolaw.com
WUCETICH & KOROVILAS LLP
222 N. Pacific Coast Hwy., Suite 2000
El Segundo, CA 90245
Telephone:   (310) 335-2001
Facsimile:    (310) 364-5201

Attorneys for Plaintiff
LYNDELL JOHNSON, as an individual and on behalf
of all others similarly situated

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNDELL JOHNSON, as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CEREBRAL, INC.; and DOES 1-10,<br><br>Defendants. | CASE NO.<br><br>CLASS ACTION<br><br>COMPLAINT FOR:<br><br>(1) NEGLIGENCE<br>(2) NEGLIGENCE PER SE<br>(3) DECLARATORY JUDGMENT<br>(4) VIOLATION OF THE CAL. CONFIDENTIALITY OF MEDICAL INFORMATION ACT, CAL. CIV. CODE § 56;<br>(5) VIOLATION OF THE CAL. CONSUMER PRIVACY ACT, CAL. CIV. CODE § 1798.150<br>(6) VIOLATION OF THE CAL. CUSTOMER RECORDS ACT, CAL. CIV. CODE § 1798.84<br>(7) VIOLATION OF THE CAL. UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200<br>(8) VIOLATION OF THE RIGHT TO PRIVACY, CAL. CONST. ART. 1, § 1<br><br>DEMAND FOR JURY TRIAL |

## SUMMARY OF THE CASE

1.    This putative class action arises from Cerebral, Inc.'s (hereinafter "CEREBRAL") negligent failure to implement and maintain reasonable cybersecurity procedures that resulted in the unlawful disclosure of certain information that is regulated as protected health information, which was discovered on or around January 3, 2023.  Plaintiff brings this class action complaint to redress injuries related to the disclosure, on behalf of herself and a nationwide class and California subclass of similarly situated persons.  Plaintiff asserts claims on behalf of a nationwide class for negligence, negligence per se, declaratory judgment, violation of CMIA, and common law invasion of privacy.  Plaintiff also brings claims on behalf of a California subclass for violation of the California Consumer Privacy Act, Cal. Civ. Code § 1798.150, the California Customer Records Act, Cal. Civ. Code § 1798.80 *et seq.*, violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, and for invasion of privacy based on the California Constitution, Art. 1, § 1.    Plaintiff seeks, among other things, compensatory damages, punitive and exemplary damages, statutory damages, injunctive relief, attorneys' fees, and costs of suit.  Plaintiff further intends to amend this complaint to seek statutory damages on behalf of the California subclass upon expiration of the 30-day cure period pursuant to Cal. Civ. Code § 1798.150(b).

## PARTIES

2.    Plaintiff Lyndell Johnson is a citizen and resident of the State of California whose personal health information was part of the unauthorized disclosure on January 3, 2023, which was announced by CEREBRAL on or around March 6, 2023 and  is the subject of this action.

3.    On information and belief, defendant Cerebral, Inc. is a Delaware corporation with its principal place of business in Walnut, California.

4.    Plaintiff brings this action on behalf of herself, on behalf of the general

- 2 -

CLASS ACTION COMPLAINT

public as a Private Attorney General pursuant to California Code of Civil Procedure § 1021.5 and on behalf of a class and subclass of similarly situated persons pursuant Federal Rule of Civil Procedure 23.

## JURISDICTION & VENUE

5. This Court has general personal jurisdiction over CEREBRAL because, at all relevant times, the company had systematic and continuous contacts with the State of California. CEREBRAL does business in California and has offices in Walnut, California. Defendant regularly contracts with a multitude of businesses, organizations and consumers in California to provide mental health related services through its online platform. CEREBRAL does in fact actually provide such continuous and ongoing mental health related services to such customers in California and nationwide, and has employees in California.

6. Furthermore, this Court has specific personal jurisdiction over CEREBRAL because the claims in this action stem from its specific contacts with the State of California — namely, CEREBRAL's provision of mental health related services to a multitude of patients in California, CEREBRAL's collection, maintenance, and processing of the personal data and personal health information of Californians in connection with such services, CEREBRAL's failure to implement and maintain reasonable security procedures and practices with respect to that data, and the consequent unlawful disclosure of such information..

7. This Court has diversity subject matter jurisdiction under 28 U.S.C. § 1332(d) in that the mater in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which members of the class defined herein include citizens of a State different from the CEREBRAL.

8. Venue is proper in the Central District of California under 28 U.S.C. § 1391 (b)(1)-(2) and (c)(2) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred within this judicial district, specifically CEREBRAL's provision of mental health related services in California

CLASS ACTION COMPLAINT

and within Los Angeles County, CEREBRAL's collection, maintenance, and processing of the personal data of Californians in connection with such services, CEREBRAL's failure to implement and maintain reasonable security procedures and practices with respect to that data, and the consequent unlawful disclosure of such information. In addition, Plaintiff is informed and believes and thereon alleges that members of the class and subclass defined below reside in the Central District, and CEREBRAL has offices within the Central District.

## **FACTUAL BACKGROUND**

9.     According to its website, CEREBRAL is a 100% online mental health platform that provides both psychiatric and therapy services.

10.     CEREBRAL therapists are mental health professionals with training in a variety of evidence-based practices to treat mental illness. They help clients develop emotional and cognitive strategies aimed at reducing the severity of their symptoms over time.

11.     CEREBRAL prescribers are medical professionals, typically Nurse Practitioners, with specialized training that allows them to diagnose and treat mental illness with prescription medication.

12.     CEREBRAL operates nationwide through its website. CEREBRAL services hundreds of thousands, if not millions, of patients nationwide. Some reports have valued the company at over $4.8 billion.

13.     In connection with its online mental health services, CEREBRAL collects, stores, and processes sensitive personal data for thousands of individuals, including but not limited to its patients, employees and customers. In doing so, CEREBRAL retains sensitive information including, but not limited to, bank account information, health care related information, medications, test results, health questionnaire information, treatment histories, addresses, and social security numbers, among other things.

14.     As a corporation doing business in California and having employees

CLASS ACTION COMPLAINT

and customers in California, CEREBRAL is legally required to protect personal information from unauthorized access, disclosure, theft, exfiltration, modification, use, or destruction.

15.    CEREBRAL knew that it was a prime target for hackers and/or unauthorized third parties given the significant amount of sensitive personal information processed through its computer data and storage systems. CEREBRAL's knowledge is underscored by the massive number of data breaches that have occurred in recent years.

16.    Despite knowing the prevalence of data breaches, CEREBRAL failed to prioritize data security by adopting reasonable data security measures to prevent and detect unauthorized access to its highly sensitive systems and databases. CEREBRAL has the resources to prevent an unlawful disclosure, but neglected to adequately invest in data security, despite the growing number of well-publicized breaches. CEREBRAL failed to undertake adequate analyses and testing of its own systems, training of its own personnel, and other data security measures as described herein to ensure vulnerabilities were avoided or remedied and that Plaintiff's and class members' data and sensitive personal health information were protected.

17.    In addition to preventing a traditional data breach or hack, CEREBRAL failed to prevent unlawful disclosure of patient personal health information and health histories as part of its use and adoption of certain online technologies. Like others in many industries, including health systems, traditional brick and mortar providers, and other telehealth companies, CEREBRAL has used what are called "pixels" and similar common technologies ("Tracking Technologies"), such as those made available by Google, Meta (Facebook), TikTok, and other third parties ("Third Party Platforms"), on CEREBRAL's Platforms. CEREBRAL has used Tracking Technologies since it began operations on October 12, 2019. Cerebral recently initiated a review of its use of Tracking

CLASS ACTION COMPLAINT

Technologies and data sharing practices involving Subcontractors.

18.    On January 3, 2023, CEREBRAL determined that it had disclosed certain information that may be regulated as protected health information ("PHI") under HIPAA to certain Third Party Platforms and some Subcontractors without having obtained HIPAA-required assurances.

19.    CEREBRAL notified impacted individuals of the unlawful disclosure via email sent on or around March 6, 2023.  Plaintiff received a copy of the March 6, 2023 disclosure notice via email confirming that her personal identifying information and protected PHI was part of the unlawful disclosure.

20.    According to the disclosure notice, the information disclosed varied depending on what actions an individual took on CEREBRAL's Platforms, the nature of the services provided by the Subcontractors, the configuration of Tracking Technologies when he or she used CEREBRAL services, the data capture configurations of the Third-Party Platforms, how a patient configured his or her device and browser, and other factors.  More specifically:

- If a patient created a CEREBRAL account, the information disclosed may have included the patient's name, phone number, email address, date of birth, IP address, CEREBRAL client ID number, and other demographic or information.

- If, in addition to creating a CEREBRAL account, a patient also completed any portion of CEREBRAL's online mental health self-assessment, the information disclosed may also have included the individual's selected service, assessment responses, and certain associated health information.

- If, in addition to creating a CEREBRAL account and completing CEREBRAL's online mental health self-assessment, the patient also purchased a subscription plan from CEREBRAL, the information disclosed may also have included subscription plan type, appointment

CLASS ACTION COMPLAINT

dates and other booking information, treatment, and other clinical information, health insurance/ pharmacy benefit information (for example, plan name and group/ member numbers), and insurance co-pay amount.

21. On information and belief, as a health care provider, the personal information CEREBRAL collects and which was impacted by the unlawful disclosure includes individual's name, date of birth, email address, client ID, social security number, and health information such as medical history, treatment and diagnosis, treatment and clinical information, health insurance and pharmacy information, plan and group health care information, and insurance co-payment amount among other personal, sensitive and confidential information.

22. By providing such sensitive PHI to CEREBRAL, patients trusted and relied upon CEREBRAL to protect their PHI from unlawful disclosure.

23. CEREBRAL affirmatively included the Meta Pixel and other online tracking software on its website. Patients and users of CEREBRAL's website were not provided notice or otherwise informed that CEREBRAL's website contained such pixel and other tracking software.

24. Third party websites that incorporate Meta Pixel and other online tracking software benefit because they analyze a user's experience and activity on its websites. They also obtain information on the websites about their users and can target them for advertisements. CEREBRAL did exactly this and transmitted to third parties, such as Meta, portions of patients private communications including PHI through embedded tracking code.

25. Plaintiff and other users of CEREBRAL's website had their sensitive health and medical information taken through the CEREBRAL website using the Meta Pixel tool and additional online trackers. The information of Plaintiff and other class members was monetized by other third parties to reach potential new customers and engage in profit motivated ventures. All of these efforts resulted in

CLASS ACTION COMPLAINT

Plaintiff and class members' personal health information being shared with third parties without their consent.

26.    Plaintiff and class members had a reasonable expectation of privacy in their PHI.

27.    CEREBRAL is required by the CMIA and other California laws identified to handle notification of any breach in accordance with applicable breach notification statutes.  These requirements are outlined in many California statutes, including but not limited to, Cal. Civ. Code §§ 56.10(a), 56.101, 1798.21, 1798.29, Cal. Bus. and Prof. Code §§ 17200 et seq., Cal. Bus. and Prof. Code §§ 22575-2257, and Article I, § 1 of the California Constitution.   If a company fails to follow these rules, it is liable for negligence per se.

28.    CEREBRAL is an entity covered by HIPAA , and as a result, they are required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C, which establish national security standards and duties for the protection of Personal and Medical Information maintained by them in electronic form.  HIPAA limits the permissible uses of health information and prohibits the disclosure of this information without explicit authorization.  See 45 C.F.R. § 164.502.  HIPAA also requires that covered entities implement safeguards to protect this information. See 45 C.F.R. § 164.530(c)(1).

29.    HIPAA requires CEREBRAL to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

30.    "Electronic protected health information" is defined as "individually identifiable health information ... that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

- 8 -

31.     HIPAA's Security Rule requires CEREBRAL to: (a) ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits; (b) protect against any reasonably expected threats or hazards to the security or integrity of such information; (c) protect against any reasonably expected uses or disclosures of such information that are not permitted; and (d) ensure compliance by their workforce.

32.     HIPAA also requires CEREBRAL to "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(c), and to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

33.     Defendant failed to comply with safeguards mandated by HIPAA regulations, including, but not limited to:

(a)     Failing to ensure the confidentiality and integrity of electronic PHI that CEREBRAL created, received, maintained, and transmitted, in violation of 45 C.F.R. section 164.306(a)(1);

(b)     Failing to implement and maintain policies for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. section 164.312(a)(1);

(c)     Failing to put policies and procedures into practice to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. section 164.308(a)(1);

(d)     Failing to identify and respond to suspected or known security

CLASS ACTION COMPLAINT

incidents and mitigate harmful effects of security incidents known to the covered entity, in violation of 45 C.F.R. section 164.308(a)(6)(ii);

(e)  Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI, in violation of 45 C.F.R. section 164.306(a)(2);

(f)  Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 C.F.R. section 164.306(a)(3);

(g)  Failing to ensure compliance with HIPAA security standard rules by its workforce by providing for adequate comprehensive training rather than simply using training software to test staff by imitating phishing emails, in violation of 45 C.F.R. section 164.306(a)(4);

(h)  Impermissibly and improperly using and disclosing PHI that is and remains accessible to unauthorized persons, in violation of 45 C.F.R. section 164.502, et seq.;

(i)  Failing to effectively train all members of its workforce (including independent contractors) on the policies and procedures for PHI as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of PHI beyond simply using training software to test staff by imitating phishing emails, in violation of 45 C.F.R. sections 164.530(b) and 164.308(a)(5); and

(j)  Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI in compliance with violation of 45 C.F.R. section 164.530(c).

34.  CEREBRAL also violated the duties applicable to them under the Federal Trade Commission Act, 15 U.S.C. § 45 et seq. ("FTC Act"), from engaging

in "unfair or deceptive acts or practices in or affecting commerce." The FTC has concluded that a company's failure to maintain reasonable data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

35. Federal and state governments have established security standards and issued recommendations to minimize unauthorized data disclosures and the resulting harm to individuals and financial institutions. Indeed, the Federal Trade Commission ("FTC") has issued numerous guides for businesses that highlight the importance of reasonable data security practices.

36. According to the FTC, the need for data security should be factored into all business decision-making.[1]  In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business.[2] Among other things, the guidelines note businesses should properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of the breach.

37. Also, the FTC recommends that companies limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor for suspicious activity on the network, and verify that

---

[1] *See* Federal Trade Commission, Start with Security (June 2015), available at https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited February 3, 2023).
[2] *See* Federal Trade Commission, Protecting Personal Information: A Guide for Business (Oct. 2016), available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf  (last visited February 3, 2023).

CLASS ACTION COMPLAINT

third-party service providers have implemented reasonable security measures.[3]

38.    Highlighting the importance of protecting against unauthorized data disclosures, the FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect personal information, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45.

39.    Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

40.    The FBI created a technical guidance document for Chief Information Officers and Chief Information Security Officers that compiles already existing federal government and private industry best practices and mitigation strategies to prevent and respond to ransomware attacks.  The document is titled *How to Protect Your Networks from Ransomware* and states that on average, more than 4,000 ransomware attacks have occurred daily since January 1, 2016. Yet, there are very effective prevention and response actions that can significantly mitigate the risks.[4] Preventative measure include:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.
- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.
- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.
- Configure firewalls to block access to known malicious IP

---

[3] *See id.*
[4] *How to Protect Your Networks from Ransomware*, FBI, https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last viewed February 3, 2023).

CLASS ACTION COMPLAINT

addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.
- Set anti-virus and anti-malware programs to conduct regular scans automatically.
- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.
- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.
- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.
- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.
- Consider disabling Remote Desktop protocol (RDP) if it is not being used. Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.
- Execute operating system environments or specific programs in a virtualized environment.
- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[5]

41. CEREBRAL could have prevented the unlawful disclosure of Plaintiff's and class members' PHI by properly utilizing best practices as advised by the federal government, as described in the preceding paragraphs, but failed to do so.

42. According to the 2021 Thales Global Cloud Security Study, more than 40% of organizations experienced a cloud-based data breach in the previous 12

---

[5] *Id.*

CLASS ACTION COMPLAINT

months. Yet, despite these incidents, the study found that nearly 83% of cloud-based businesses still fail to encrypt half of the sensitive data they store in the cloud.[6]

43.   Upon information and belief, CEREBRAL did not encrypt Plaintiff's and class members' personal information involved in the unlawful disclosure.

44.   Despite knowing the prevalence of data breaches and unlawful disclosure through online data tracking and pixel software, CEREBRAL failed to prioritize cybersecurity by adopting reasonable security measures to prevent and detect unauthorized access to its highly sensitive systems and databases. CEREBRAL has the resources to prevent an unauthorized disclosure, but neglected to adequately invest in cybersecurity, despite the growing number of well-publicized breaches and disclosures. CEREBRAL failed to fully implement each and all of the above-described data security best practices. CEREBRAL further failed to undertake adequate analyses and testing of its own systems, training of its own personnel, and other data security measures to ensure vulnerabilities were avoided or remedied and that Plaintiff's and class members' data were protected. CEREBRAL's practices are especially egregious because the company is involved with some of the most sensitive information of consumers, namely personal health information, medical histories, and medication and treatment histories.

45.   CEREBRAL owed a duty to Plaintiff and Class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the personal and medical information in their possession from being misused by unauthorized persons such as Meta and other unauthorized third parties. This also included a duty to Plaintiff and Class members to design, maintain, and test their computer systems to make sure the personal and medical information in their possession was adequately secured and protected; to create and implement

---

[6] Maria Henriquez, *40% of organizations have suffered a cloud-based data breach,* Security, Oct. 29, 2021, https://www.securitymagazine.com/articles/96412-40-of-organizations-have-suffered-a-cloud-based-datq-breach (last visited February 3, 2023).

CLASS ACTION COMPLAINT

1  reasonable data security practices and procedures to protect the personal and
2  medical information in their possession; and to disclose if their computer systems
3  and data security practices were inadequate to safeguard individuals' personal and
4  medical information.

5      46.    As a direct and proximate result of CEREBRAL's actions, Plaintiff
6  and class members have suffered and will continue to suffer damages and other
7  injuries and harm, as well as statutory damages to which they are entitled, and
8  increased risk of future harm.

9                              **Plaintiff's Facts**

10     47.    Plaintiff's and class members' personal identifying information,
11  including their names, social security numbers, and health information such as
12  medical history, treatment and diagnosis, and other health related information
13  alleged herein were in the possession, custody and/or control of CEREBRAL.
14  Plaintiff believed that CEREBRAL would protect and keep her personal identifying
15  information protected, secure and safe from unlawful disclosure

16     48.    After the disclosure, Plaintiff received notice from CEREBRAL via
17  email dated March 6, 2023.

18     49.    Plaintiff has spent and will continue to spend time and effort
19  monitoring his accounts to protect herself from identity theft.  Plaintiff remains
20  concerned for her personal security and the uncertainty of what personal
21  information was exposed to marketers, hackers and/or posted to the dark web.

22     50.    As a direct and foreseeable result of CEREBRAL's negligent failure to
23  implement and maintain reasonable data security procedures and practices and the
24  resultant unlawful disclosure, Plaintiff and all class members, have suffered harm in
25  that their sensitive personal information has been exposed to unwanted third parties
26  and they have an increased stress, risk, and fear of identity theft and fraud.  This is
27  not just a generalized anxiety of possible identify theft, privacy, or fraud concerns,
28  but a concrete stress and risk of harm resulting from an actual breach and

accompanied by actual instances of reported problems suspected to stem from the disclosure of their most sensitive health related information.

## CLASS ACTION ALLEGATIONS

51.     Plaintiff brings this action on behalf of herself and all other similarly situated persons pursuant to Federal Rule of Civil Procedure 23, including Rule 23(b)(1)-(3) and (c)(4).     Plaintiff seeks to represent the following class and subclasses:

> **Nationwide Class**.  All persons in the United States whose personal health information was disclosed to unauthorized third parties through any CEREBRAL website, as described in the disclosure notice dated March 6, 2023.

> **California Subclass.**    All persons residing in California whose personal health information was disclosed to unauthorized third parties through any CEREBRAL website, as described in the disclosure notice dated March 6, 2023.

Excluded from the class are the following individuals and/or entities:  CEREBRAL and its parents, subsidiaries, affiliates, officers, directors, or employees, and any entity in which CEREBRAL has a controlling interest; all individuals who make a timely request to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

52.     Plaintiff reserves the right to amend or modify the class definitions with greater particularity or further division into subclasses or limitation to particular issues.

53.     This action has been brought and may be maintained as a class action under Rule 23 because there is a well-defined community of interest in the litigation and the proposed classes are ascertainable, as described further below:

> a.  <u>Numerosity</u>: The potential members of the class as defined are so numerous that joinder of all members of the class is impracticable.

While the precise number of class members at issue has not been determined, Plaintiff believes the unauthorized disclosure impacted hundreds of thousands of individuals nationwide and at least many tens of thousands within California.

b. <u>Commonality</u>: There are questions of law and fact common to Plaintiff and the class that predominate over any questions affecting only the individual members of the class.  The common questions of law and fact include, but are not limited to, the following:

    i. Whether CEREBRAL owed a duty to Plaintiff and class members to exercise due care in collecting, storing, processing, and safeguarding their personal information, including their personal health information;

    ii. Whether CEREBRAL breached those duties;

    iii. Whether CEREBRAL implemented and maintained reasonable security procedures and practices appropriate to the nature of the personal information of class members;

    iv. Whether CEREBRAL acted negligently in connection with the monitoring and/or protecting of Plaintiff's and class members' personal information, including their personal health information;

    v. Whether CEREBRAL knew or should have known that they did not employ reasonable measures to keep Plaintiff's and class members' personal information secure and prevent loss or misuse of that personal information;

    vi. Whether CEREBRAL adequately addressed and fixed the vulnerabilities which permitted the disclosure to occur;

    vii. Whether CEREBRAL caused Plaintiff and class members damages;

CLASS ACTION COMPLAINT

viii. Whether the damages CEREBRAL caused to Plaintiff and class members includes the increased risk and fear of identity theft and fraud resulting from the access and exfiltration, theft, or disclosure of their personal information, including their personal health information;

ix. Whether Plaintiff and class members are entitled to credit monitoring and other monetary relief;

x. Whether CEREBRAL's failure to implement and maintain reasonable security procedures and practices constitutes negligence;

xi. Whether CEREBRAL's failure to implement and maintain reasonable security procedures and practices constitutes negligence per se;

xii. Whether CEREBRAL's failure to implement and maintain reasonable security procedures and practices constitutes violation of the Federal Trade Commission Act, 15 U.S.C. § 45(a);

xiii. Whether CEREBRAL's failure to implement and maintain reasonable security procedures and practices constitutes violation of the California Consumer Privacy Act, Cal. Civ. Code § 1798.150, CIMA, Cal. Civ. Code § 56, California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; and

xiv. Whether the California subclass is entitled to actual pecuniary damages under the private rights of action in the California Customer Records Act, Cal. Civ. Code § 1798.84, the California Consumer Privacy Act, Civ. Code § 1798.150, and the proper measure of such damages, and/or statutory damages pursuant § 1798.150(a)(1)(A) and the proper measure of such damages.

CLASS ACTION COMPLAINT

c. <u>Typicality</u>.  The claims of the named Plaintiff are typical of the claims of the class members because all had their personal information compromised as a result of CEREBRAL's failure to implement and maintain reasonable security measures and the consequent unlawful disclosure.

d. <u>Adequacy of Representation</u>.  Plaintiff will fairly and adequately represent the interests of the class.  Counsel who represent Plaintiff are experienced and competent in consumer and employment class actions, as well as various other types of complex and class litigation.

e. <u>Superiority and Manageabilty</u>.  A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of all Plaintiffs is not practicable, and questions of law and fact common to Plaintiffs predominate over any questions affecting only Plaintiff.  Each Plaintiff has been damaged and is entitled to recovery by reason of CEREBRAL's unlawful failure to adequately safeguard their data.  Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.  As any civil penalty awarded to any individual class member may be small, the expense and burden of individual litigation make it impracticable for most class members to seek redress individually.  It is also unlikely that any individual consumer would bring an action solely on behalf of himself or herself pursuant to the theories asserted herein.  Additionally, the proper measure of civil penalties for each wrongful act will be answered in a consistent and uniform manner.  Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims.  There will be no

CLASS ACTION COMPLAINT

difficulty in the management of this action as a class action, as CEREBRAL's records will readily enable the Court and parties to ascertain affected companies and their employees.

f. <u>Notice to Class</u>.    Among other means, potential notice to class members of this class action can be accomplished to all individuals who received a copy of the March 6, 2023 notice letter through electronic mail and/or U.S. Mail and/or through publication.

54.    Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2) because CEREBRAL has acted or refused to act on grounds generally applicable to the class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the class as a whole.

55.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of the matters and the parties' interests therein.  Such particular issues include, but are not limited to:

a. Whether CEREBRAL owed a legal duty to Plaintiff and class members to exercise due care in collecting, storing, processing, using, and safeguarding their personal information, including their personal health information;

b. Whether CEREBRAL breached that legal duty to Plaintiff and class members to exercise due care in collecting, storing, processing, using, and safeguarding their personal information, including their personal health information;

c. Whether CEREBRAL failed to comply with their own policies and applicable laws, regulations, and industry standards relating to data security and HIPAA;

CLASS ACTION COMPLAINT

d. Whether CEREBRAL failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the personal information compromised in the disclosure; and

e. Whether class members are entitled to actual damages, credit monitoring, injunctive relief, statutory damages, and/or punitive damages as a result of CEREBRAL's wrongful conduct as alleged herein.

## **FIRST CAUSE OF ACTION**
### **(Negligence, By Plaintiff and the Nationwide Class Against CEREBRAL)**

56. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

57. CEREBRAL owed a duty to Plaintiff and class members to exercise reasonable care in obtaining, storing, using, processing, deleting and safeguarding their personal information in its possession from being compromised, stolen, accessed, and/or misused by unauthorized persons. That duty includes a duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the personal information that were compliant with and/or better than industry-standard practices. CEREBRAL's duties included a duty to design, maintain, and test its security systems to ensure that Plaintiff's and class members' personal information was adequately secured and protected, to implement processes that would detect a breach of its security system in a timely manner, to timely act upon warnings and alerts, including those generated by its own security systems regarding intrusions to its networks, and to promptly, properly, and fully notify its customers, Plaintiff, and class members of any data breach.

58. CEREBRAL's duties to use reasonable care arose from several sources, including but not limited to those described below.

59. CEREBRAL had a common law duty to prevent foreseeable harm to others. This duty existed because Plaintiff and class members were the foreseeable

and probable victims of any inadequate security practices. In fact, not only was it foreseeable that Plaintiff and class members would be harmed by the failure to protect their personal information because hackers routinely attempt to steal such information and use it for nefarious purposes, but CEREBRAL also knew that it was more likely than not Plaintiff and other class members would be harmed.

60.    CEREBRAL's duty to use reasonable security measures under HIPAA required CEREBRAL to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and "to have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(1). Some and/or all of the personal healthcare and/or medical information at issue is "protected health information" within the meaning if HIPAA.

61.    CEREBRAL's duty also arose under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect personal information by companies such as CEREBRAL.

62.    Various FTC publications and data security breach orders further form the basis of CEREBRAL's duty. According to the FTC, the need for data security should be factored into all business decision making.[7] In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[8] Among other things, the guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer

---

[7] *Start with Security, A Guide for Business*, FTC (June 2015),
https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf
[8] *Protecting Personal Information, A Guide for Business*, FTC (Oct. 2016),
https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf

CLASS ACTION COMPLAINT

networks; understand their network's vulnerabilities; and implement policies to correct security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach. Additionally, the FTC recommends that companies limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor for suspicious activity on the network, and verify that third-party service providers have implemented reasonable security measures. The FBI has also issued guidance on best practices with respect to data security that also form the basis of CEREBRAL's duty of care, as described above.[9]

63. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and class members' personal information, CEREBRAL assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and class members' personal information from disclosure.

64. CEREBRAL also had a duty to safeguard the personal information of Plaintiff and class members and to promptly notify them of a breach because of state laws and statutes that require CEREBRAL to reasonably safeguard personal information, as detailed herein, including Cal. Civ. Code § 1798.80 *et seq.* and Cal. Civ. Code § 56 *et seq.*

65. Timely notification was required, appropriate, and necessary so that, among other things, Plaintiff and class members could take appropriate measures to freeze or lock their credit profiles, cancel or change usernames or passwords on compromised accounts, monitor their account information and credit reports for fraudulent activity, contact their banks or other financial institutions that issue their

---

[9] *How to Protect Your Networks from Ransomware*, FBI, https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view  (last viewed February 3, 2023).

CLASS ACTION COMPLAINT

credit or debit cards, obtain credit monitoring services, develop alternative timekeeping methods or other tacks to avoid untimely or inaccurate wage payments, and take other steps to mitigate or ameliorate the damages caused by CEREBRAL's misconduct.

66. Plaintiff and class members have taken reasonable steps to maintain the confidentiality of their personal information.

67. CEREBRAL breached the duties it owed to Plaintiff and class members described above and thus was negligent. CEREBRAL breached these duties by, among other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect the personal information of Plaintiff and class members; (b) prevent the disclosure; (c) timely detect the disclosure; (d) maintain security systems consistent with industry; (e) timely disclose that Plaintiff's and class members' personal information in CEREBRAL's possession had been or was reasonably believed to have been compromised; (f) failing to comply fully even with its own purported security practices.

68. CEREBRAL knew or should have known of the risks of collecting and storing personal information and the importance of maintaining secure systems, especially in light of the increasing frequency of ransomware attacks. The sheer scope of CEREBRAL's operations further shows that CEREBRAL knew or should have known of the risks and possible harm that could result from its failure to implement and maintain reasonable security measures. On information and belief, this is but one of the several vulnerabilities that plagued CEREBRAL's systems and led to the unlawful disclosure.

69. Through CEREBRAL's acts and omissions described in this complaint, including CEREBRAL's failure to provide adequate security and its failure to protect the personal information of Plaintiff and class members from being foreseeably captured, accessed, exfiltrated, stolen, disclosed, accessed, and

misused, CEREBRAL unlawfully breached their duty to use reasonable care to adequately protect and secure Plaintiff's and class members' personal information.

70.    CEREBRAL further failed to timely and accurately disclose to customers and patients, Plaintiff, and class members that their personal information had been improperly acquired or accessed.

71.    But for CEREBRAL's wrongful and negligent breach of its duties owed to Plaintiff and class members, their personal information would not have been compromised.

72.    Plaintiff and class members relied on CEREBRAL to keep their personal information confidential and securely maintained, and to use this information for business purposes only, and to make only authorized disclosures of this information.

73.    As a direct and proximate result of CEREBRAL's negligence, Plaintiff and class members have been injured as described herein, and are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.  As a result of CEREBRAL's failure to protect Plaintiff's and class members' personal information, Plaintiff's and class members' personal information has been accessed by malicious cybercriminals.  Plaintiff's and the class members' injuries include:

a.  theft of their personal information;

b.  costs associated with requested credit freezes;

c.  costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

d.  costs associated with purchasing credit monitoring and identity theft protection services;

e.  unauthorized charges and loss of use of and access to their financial account funds and costs associated with the inability to obtain money from their accounts or being limited in the amount of money they were

CLASS ACTION COMPLAINT

permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit;

f.  lowered credit scores resulting from credit inquiries following fraudulent activities;

g.  costs associated with time spent and loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the data breach, including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

h.  the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their personal information being placed in the hands of criminals;

i.  damages to and diminution of value of their personal information entrusted, directly or indirectly, to CEREBRAL with the mutual understanding that CEREBRAL would safeguard Plaintiff's and the class members' data against theft and not allow access and misuse of their data by others;

j.  continued risk of exposure to hackers and thieves of their personal information, which remains in CEREBRAL's possession and is subject to further disclosures or breaches so long as CEREBRAL fails to undertake appropriate and adequate measures to protect Plaintiff and class members, along with damages stemming from the stress, fear, and anxiety of an increased risk of identity theft and fraud stemming from the disclosure;

k.  loss of the inherent value of their personal information;

CLASS ACTION COMPLAINT

l. the loss of the opportunity to determine for themselves how their personal information is used; and

m. other significant additional risk of identity theft, financial fraud, and other identity-related fraud in the indefinite future.

74. In connection with the conduct descried above, CEREBRAL acted wantonly, recklessly, and with complete disregard for the consequences Plaintiff and class members would suffer if their highly sensitive and confidential personal information was accessed by unauthorized third parties.

## SECOND CAUSE OF ACTION
**(Negligence Per Se, By Plaintiff and the Nationwide Class Against CEREBRAL)**

75. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

76. Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect personal information by companies such as CEREBRAL. Various FTC publications and data security breach orders further form the basis of CEREBRAL's duty. In addition, individual states have enacted statutes based on the FTC Act that also created a duty.

77. CEREBRAL violated Section 5 of the FTC Act by failing to use reasonable measures to protect personal information and not complying with industry standards. CEREBRAL's conduct was particularly unreasonable given the nature and amount of personal information it obtained and stored and the foreseeable consequences of a data breach.

78. CEREBRAL's duty to use reasonable security measures under HIPAA required CEREBRAL to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and "to have in place appropriate

CLASS ACTION COMPLAINT

administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(1). Some and/or all of the personal healthcare and/or medical information at issue is "protected health information" within the meaning if HIPAA.

79.    CEREBRAL's violation of Section 5 of the FTC Act and 45 C.F.R. § 164.530(c)(1) constitutes negligence *per se*.

80.    Plaintiff and class members are consumers within the class of persons Section 5 of the FTC Act was meant to protect.

81.    Moreover, the harm that has occurred is the type of harm that the FTC Act was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and the class.

82.    As a direct and proximate result of CEREBRAL's negligence, Plaintiff and class members have been injured as described herein, and are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
### (Declaratory Judgment, By Plaintiff and the Nationwide Class Against CEREBRAL)

83.    Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

84.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this complaint.

85.    An actual controversy has arisen in the wake of the CEREBRAL

unlawful disclosure of personal health information regarding its present and prospective common law and other duties to reasonably safeguard consumers personal identifying information in its possession, custody and/or control and regarding whether CEREBRAL is currently maintaining data security measures adequate to protect Plaintiff and class members from further disclosures and/or breaches that compromise their personal health information.  Plaintiff alleges that CEREBRAL's data security measures remain inadequate.   CEREBRAL denies these allegations.  Plaintiff continues to suffer injury as a result of the compromise of her personal information and remains at imminent risk that further compromises of her personal information will occur in the future.

86.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. CEREBRAL continues to owe a legal duty to secure consumers' personal health information, including Plaintiff's and class members' personal health information, to timely notify them of an unauthorized disclosure under the common law, Section 5 of the FTC Act; and

b. CEREBRAL continues to breach this legal duty by failing to employ reasonable measures to secure Plaintiff's and class members' personal health information.

87.    The Court should issue corresponding prospective injunctive relief requiring CEREBRAL to employ adequate security protocols consistent with law and industry standards to protect Plaintiff's and class members' personal information.

88.    If an injunction is not issued, Plaintiff will suffer irreparable injury, and lack an adequate legal remedy, in the event of another disclosure and/or breach at CEREBRAL.   The risk of another such unauthorized disclosure is real, immediate, and substantial.   If another breach or unauthorized disclosure at CEREBRAL occurs, Plaintiff will not have an adequate remedy at law because

many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

89.    The hardship to Plaintiff if an injunction does not issue exceeds the hardship to CEREBRAL if an injunction is issued.  Among other things, if another massive disclosure and/or breach occurs, Plaintiff and class members will likely be subjected to substantial identity theft and/or other damage.  On the other hand, the cost to CEREBRAL of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and CEREBRAL has a pre-existing legal obligation to employ such measures.

90.    Issuance of the requested injunction will not disserve the public interest.  To the contrary, such an injunction would benefit the public by preventing another disclosure and/or breach, thus eliminating the additional injuries that would result to Plaintiff and the tens of thousands of class members whose confidential information would be further compromised.

## **FOURTH CAUSE OF ACTION**

**(Violation of the California Confidential Medical Information Act,
Cal. Civ. Code § 56*et seq.*
By the Nationwide Class Against CEREBRAL)**

91.    Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

92.    Section 56.10(a) of the California Civil Code provides that "[a] provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization[.]"

93.    CEREBRAL is a "contractor" within the meaning of Civil Code § 56.05(d) within the meaning of Civil Code § 56.06 and/or a "business organized for

the purpose of maintaining medical information" and/or a "business that offers software or hardware to consumers . . . that is designed to maintain medical information" within the meaning of Civil Code § 56.06(a) and (b), and maintained and continues to maintain "medical information," within the meaning of Civil Code § 56.05(j), for "patients" of CEREBRAL, within the meaning of Civil Code § 56.05(k).

94.    Plaintiff and class members are "patients" within the meaning of Civil Code § 56.05(k) and are "endanger[ed]" within the meaning of Civil Code § 56.05(e) because Plaintiff and Class members members fear that disclosure of their medical information could subject them to harassment or abuse.

95.    Plaintiff and class members, as patients, had their individually identifiable "medical information," within the meaning of Civil Code § 56.05(j), created, maintained, preserved, and stored on CEREBRAL's computer network at the time of the unauthorized disclosure.

96.    CEREBRAL, through inadequate security, allowed unauthorized third-party access to Plaintiff's and class members' medical information, without the prior written authorization of Plaintiff and class members, as required by Civil Code § 56.10 of the CMIA.

97.    In violation of Civil Code § 56.10(a), CEREBRAL disclosed Plaintiff's and class members' medical information without first obtaining an authorization.  Plaintiff's and class members' medical information was viewed by unauthorized individuals as a direct and proximate result of CEREBRAL's violation of Civil Code § 56.10(a).

98.    In violation of Civil Code § 56.10(e), CEREBRAL further disclosed Plaintiff's and class members' medical information to persons or entities not engaged in providing direct health care services to Plaintiff or class members, or to their providers of health care or health care service plans or their insurers or self-insured employers.

CLASS ACTION COMPLAINT

99.    CEREBRAL violated Civil Code § 56.101 of the CMIA through its willful and knowing failure to maintain and preserve the confidentiality of the medical information of Plaintiff and the class members. CEREBRAL's conduct with respect to the disclosure of confidential PII/PHI was willful and knowing because CEREBRAL designed and implemented the computer network and security practices that gave rise to the unlawful disclosure.

100.    In violation of Civil Code § 56.101(a), CEREBRAL created, maintained, preserved, stored, abandoned, destroyed, or disposed of Plaintiff's and class members' medical information in a manner that failed to preserve and breached the confidentiality of the information contained therein. Plaintiff's and class members' medical information was viewed by unauthorized individuals as a direct and proximate result of CEREBRAL's violation of Civil Code § 56.101(a). 380. In violation of Civil Code § 56.101(a), CEREBRAL negligently created, maintained, preserved, stored, abandoned, destroyed, or disposed of Plaintiff's and class members' medical information. Plaintiff's and class members' medical information was viewed by unauthorized individuals as a direct and proximate result of CEREBRAL's violation of Civil Code § 56.101(a).

101.    Plaintiff's and class members' medical information that was the subject of the unauthorized disclosure included "electronic medical records" or "electronic health records" as referenced by Civil Code § 56.101(c) and defined by 42 U.S.C. § 17921(5).

102.    In violation of Civil Code § 56.101(b)(1)(A), CEREBRAL's electronic health record system or electronic medical record system failed to protect and preserve the integrity of electronic medical information. Plaintiff's and class members' medical information was viewed by unauthorized individuals as a direct and proximate result of CEREBRAL's violation of Civil Code § 56.101(b)(1)(A).

103.    CEREBRAL violated Civil Code § 56.36 of the CMIA through its failure to maintain and preserve the confidentiality of the medical information of

1    Plaintiff and the class members.

2        104.    As a result of CEREBRAL's above-described conduct, Plaintiff and

3    class members have suffered damages from the unauthorized disclosure and release

4    of their individual identifiable "medical information" made unlawful by Civil Code

5    §§ 56.10, 56.101, 56.36. 385. As a direct and proximate result of CEREBRAL's

6    above-described wrongful actions, inaction, omissions, and want of ordinary care

7    that directly and proximately caused the unauthorized disclosure, and violation of

8    the CMIA, Plaintiff and class members have suffered (and will continue to suffer)

9    economic damages and other injury and actual harm in the form of, inter alia, (i) an

10    imminent, immediate and the continuing increased risk of identity theft, identity

11    fraud and medical fraud—risks justifying expenditures for protective and remedial

12    services for which they are entitled to compensation, (ii) invasion of privacy, (iii)

13    breach of the confidentiality of their PII/PHI, (iv) statutory damages under the

14    California CMIA, (v) deprivation of the value of their PII/PHI, for which there is a

15    well-established national and international market, and/or (vi) the financial and

16    temporal cost of monitoring their credit, monitoring their financial accounts, and

17    mitigating their damages.

18        105.    Plaintiff, individually and for each member of the class, seeks nominal

19    damages of one thousand dollars ($1,000) for each violation under Civil Code §

20    56.36(b)(1), and actual damages suffered, if any, pursuant to Civil Code §

21    56.36(b)(2), injunctive relief, as well as punitive damages of up to $3,000 per

22    Plaintiff and each class member, and attorneys' fees, litigation expenses and court

23    costs, pursuant to Civil Code § 56.35.

24

25

26

27

28    / / /

- 33 -

CLASS ACTION COMPLAINT

# FIFTH CAUSE OF ACTION

**(Violation of the California Consumer Privacy Act,
Cal. Civ. Code §§ 1798.100 *et seq.*, § 1798.150(a)
By Plaintiff and the California Subclass Against CEREBRAL)**

106.   Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

107.   The California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.150(a), creates a private cause of action for violations of the CCPA.  Section 1798.150(a) specifically provides:

> Any consumer whose nonencrypted and nonredacted personal information, as defined in subparagraph (A) of paragraph (1) of subdivision (d) of Section 1798.81.5, is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for any of the following:
>
> > (A) To recover damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident or actual damages, whichever is greater.
> >
> > (B) Injunctive or declaratory relief.
> >
> > (C) Any other relief the court deems proper.

108.   CEREBRAL is a "business" under § 1798.140(b) in that it is a corporation organized for profit or financial benefit of its shareholders or other owners, with gross revenue in excess of $25 million.

109.   Plaintiff and California subclass members are covered "consumers" under § 1798.140(g) in that they are natural persons who are California residents.

110.   The personal information of Plaintiff and the California subclass at

- 34 -

issue in this lawsuit constitutes "personal information" under § 1798.150(a) and 1798.81.5, in that the personal information CEREBRAL collects and which was impacted by the unauthorized disclosure includes an individual's first name or first initial and the individual's last name in combination with one or more of the following data elements, with either the name or the data elements not encrypted or redacted: (i) Social security number; (ii) Driver's license number, California identification card number, tax identification number, passport number, military identification number, or other unique identification number issued on a government document commonly used to verify the identity of a specific individual; (iii) account number or credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account; (iv) medical information; (v) health insurance information; (vi) unique biometric data generated from measurements or technical analysis of human body characteristics, such as a fingerprint, retina, or iris image, used to authenticate a specific individual.

111.   CEREBRAL knew or should have known that its computer systems and data security practices were inadequate to safeguard the California subclass's personal information and that the risk of a data breach or unauthorized disclosure or theft was highly likely.  CEREBRAL failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information of Plaintiff and the California subclass. Specifically, CEREBRAL subjected Plaintiff's and the California subclass's nonencrypted and nonredacted personal information to an unauthorized access and exfiltration, theft, or disclosure as a result of the CEREBRAL's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, as described herein.

112.   As a direct and proximate result of CEREBRAL's violation of its duty, the unauthorized access and exfiltration, theft, or disclosure of Plaintiff's and class

members' personal information included exfiltration, theft, or disclosure through CEREBRAL's servers, systems, and website, and/or the dark web, where hackers further disclosed the personal identifying information alleged herein.

113. As a direct and proximate result of CEREBRAL's acts, Plaintiff and the California subclass were injured and lost money or property, including but not limited to the loss of Plaintiff's and the subclass's legally protected interest in the confidentiality and privacy of their personal information, stress, fear, and anxiety, nominal damages, and additional losses described above.

114. Section 1798.150(b) specifically provides that "[n]o [prefiling] notice shall be required prior to an individual consumer initiating an action solely for actual pecuniary damages." Accordingly, Plaintiff and the California subclass by way of this complaint seek actual pecuniary damages suffered as a result of CEREBRAL's violations described herein. Plaintiff has issued and/or will issue a notice of these alleged violations pursuant to § 1798.150(b) and intends to amend this complaint to seek statutory damages and injunctive relief upon expiration of the 30-day cure period pursuant to § 1798(a)(1)(A)-(B), (a)(2), and (b).

### SIXTH CAUSE OF ACTION
**(Violation of the California Customer Records Act, Cal. Civ. Code §§ 1798.80 *et seq.*,**
**By Plaintiff and the California Subclass Against CEREBRAL)**

115. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

116. Cal. Civ. Code § 1798.81.5 provides that "[i]t is the intent of the Legislature to ensure that personal information about California residents is protected. To that end, the purpose of this section is to encourage businesses that own, license, or maintain personal information about Californians to provide reasonable security for that information."

117. Section 1798.81.5(b) further states that: "[a] business that owns,

licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

118. Cal. Civ. Code § 1798.84(b) provides that [a]ny customer injured by a violation of this title may institute a civil action to recover damages." Section 1798.84(e) further provides that "[a]ny business that violates, proposes to violate, or has violated this title may be enjoined."

119. Plaintiff and members of the California subclass are "customers" within the meaning of Civ. Code § 1798.80(c) and 1798.84(b) because they are individuals who provided personal information to CEREBRAL, directly and/or indirectly, for the purpose of obtaining a service from CEREBRAL.

120. The personal information of Plaintiff and the California subclass at issue in this lawsuit constitutes "personal information" under § 1798.81.5(d)(1) in that the personal information CEREBRAL collects and which was impacted by the cybersecurity attack includes an individual's first name or first initial and the individual's last name in combination with one or more of the following data elements, with either the name or the data elements not encrypted or redacted: (i) Social security number; (ii) Driver's license number, California identification card number, tax identification number, passport number, military identification number, or other unique identification number issued on a government document commonly used to verify the identity of a specific individual; (iii) account number or credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account; (iv) medical information; (v) health insurance information; (vi) unique biometric data generated from measurements or technical analysis of human body characteristics, such as a fingerprint, retina, or iris image, used to authenticate a specific individual.

121. CEREBRAL knew or should have known that its computer systems

and data security practices were inadequate to safeguard the California subclass's personal information and that the risk of a data breach and/or unauthorized disclosure and/or theft was highly likely.  CEREBRAL failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information of Plaintiff and the California subclass.  Specifically, CEREBRAL failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information of Plaintiff and the California subclass from unauthorized access, destruction, use, modification, or disclosure.  CEREBRAL further subjected Plaintiff's and the California subclass's nonencrypted and nonredacted personal information to an unauthorized access and exfiltration, theft, or disclosure as a result of the CEREBRAL's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, as described herein.

122.   As a direct and proximate result of CEREBRAL's violation of its duty, the unauthorized access, destruction, use, modification, or disclosure of the personal information of Plaintiff and the California subclass included unauthorized third party access to, removal, deletion, destruction, use, modification, disabling, disclosure and/or conversion of the personal information of Plaintiff and the California subclass by the ransomware attackers and/or additional unauthorized third parties to whom those parties sold and/or otherwise transmitted the information.

123.   As a direct and proximate result of CEREBRAL's acts or omissions, Plaintiff and the California subclass were injured and lost money or property including, but not limited to, the loss of Plaintiff's and the subclass's legally protected interest in the confidentiality and privacy of their personal information, nominal damages, and additional losses described above.  Plaintiff seeks compensatory damages as well as injunctive relief pursuant to Cal. Civ. Code §

1798.84(b).

124.   Moreover, the California Customer Records Act further provides: "A person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of the breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person."  Cal. Civ. Code § 1798.82.

125.   Any person or business that is required to issue a security breach notification under the CRA must meet the following requirements under §1798.82(d):

    a. The name and contact information of the reporting person or business subject to this section;

    b. A list of the types of personal information that were or are reasonably believed to have been the subject of a breach;

    c. If the information is possible to determine at the time the notice is provided, then any of the following:

        i. the date of the breach,

        ii. the estimated date of the breach, or

        iii. the date range within which the breach occurred. The notification shall also include the date of the notice;

    d. Whether notification was delayed as a result of a law enforcement investigation, if that information is possible to determine at the time the notice is provided;

    e. A general description of the breach incident, if that information is possible to determine at the time the notice is provided;

    f. The toll-free telephone numbers and addresses of the major credit reporting agencies if the breach exposed a social security number or a driver's license or California identification card number;

- 39 -

g.  If the person or business providing the notification was the source of the breach, an offer to provide appropriate identity theft prevention and mitigation services, if any, shall be provided at no cost to the affected person for not less than 12 months along with all information necessary to take advantage of the offer to any person whose information was or may have been breached if the breach exposed or may have exposed personal information.

126.   CEREBRAL failed to provide the legally compliant notice under § 1798.82(d) to Plaintiff and members of the California subclass.  On information and belief, to date, CEREBRAL has not sent written notice of the breach to all impacted individuals.  As a result, CEREBRAL has violated § 1798.82 by not providing legally compliant and timely notice to all class members.  Because not all members of the class have been notified of the breach, members could have taken action to protect their personal information, but were unable to do so because they were not timely notified of the breach.

127.   On information and belief, many class members affected by the breach, have not received any notice at all from CEREBRAL in violation of Section 1798.82(d).

128.   As a result of the violations of Cal. Civ. Code § 1798.82, Plaintiff and class members suffered incrementally increased damages separate and distinct from those simply caused by the breaches themselves.

129.   As a direct consequence of the actions as identified above, Plaintiff and class members incurred additional losses and suffered further harm to their privacy, including but not limited to economic loss, the loss of control over the use of their identity, increased stress, fear, and anxiety, harm to their constitutional right to privacy, lost time dedicated to the investigation of the breach and effort to cure any resulting harm, the need for future expenses and time dedicated to the recovery and protection of further loss, and privacy injuries associated with having their

sensitive personal, financial, and payroll information disclosed, that they would not have otherwise incurred, and are entitled to recover compensatory damages according to proof pursuant to § 1798.84(b).

## SEVENTH CAUSE OF ACTION
### (Violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §17200 *et seq.*
### By Plaintiff and the California Subclass Against CEREBRAL)

130.   Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

131.   CEREBRAL is a "person" defined by Cal. Bus. & Prof. Code § 17201.

132.   CEREBRAL violated Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

133.   CEREBRAL's "unfair" acts and practices include:

   a.   CEREBRAL failed to implement and maintain reasonable security measures to protect Plaintiff's and California sublcass members' personal information from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the CEREBRAL unauthorized disclosure.  CEREBRAL failed to identify foreseeable security risks, remediate identified security risks, and adequately improve security following previous cybersecurity incidents and known coding vulnerabilities in the industry;

   b.   CEREBRAL's failure to implement and maintain reasonable security measures also was contrary to legislatively-declared public policy that seeks to protect consumers' data and ensure that entities that are trusted with it use appropriate security measures. These policies are reflected in laws, including the FTC Act (15 U.S.C. § 45), California's Customer Records Act (Cal. Civ. Code § 1798.80 *et seq.*), California's Consumer Privacy Act (Cal. Civ. Code § 1798.150); California

CLASS ACTION COMPLAINT

Confidentiality of Medical Information Act, Cal. Civ. Code §§ 56.10(a), 56.101; HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C;

c. CEREBRAL's failure to implement and maintain reasonable security measures also led to substantial consumer injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because consumers could not know of CEREBRAL's inadequate security, consumers could not have reasonably avoided the harms that CEREBRAL caused; and

d. Engaging in unlawful business practices by violating Cal. Civ. Code § 1798.82.

134. CEREBRAL has engaged in "unlawful" business practices by violating multiple laws, including California's Consumer Records Act, Cal. Civ. Code §§ 1798.81.5 (requiring reasonable data security measures) and 1798.82 (requiring timely breach notification), California's Consumer Privacy Act, Cal. Civ. Code § 1798.150, California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1780, *et seq*., the FTC Act, 15 U.S.C. § 45, California Confidentiality of Medical Information Act, Cal. Civ. Code §§ 56.10(a), 56.101; HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C, and California common law.

135. CEREBRAL's unlawful, unfair, and deceptive acts and practices include:

CLASS ACTION COMPLAINT

a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and California subclass members' personal health information, which was a direct and proximate cause of the CEREBRAL unauthorized disclosure;

b. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the CEREBRAL unauthorized disclosure;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and California subclass members' personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45, California's Customer Records Act, Cal. Civ. Code §§ 1798.80 *et seq.*, and California's Consumer Privacy Act, Cal. Civ. Code § 1798.150, California Confidentiality of Medical Information Act, Cal. Civ. Code §§ 56.10(a), 56.101; HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C, which was a direct and proximate cause of the CEREBRAL disclosure;

d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and California subclass members' personal information, including by implementing and maintaining reasonable security measures;

e. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and

CLASS ACTION COMPLAINT

California subclass members' personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45, California's Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq*., and California's Consumer Privacy Act, Cal. Civ. Code § 1798.150;

f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and California subclass members' personal information; and

g.  Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and California subclass members' personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45, California's Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq*., and California's Consumer Privacy Act, Cal. Civ. Code § 1798.150.

136.  CEREBRAL's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of CEREBRAL's data security and ability to protect the confidentiality of consumers' personal information.

137.  As a direct and proximate result of CEREBRAL's unfair, unlawful, and fraudulent acts and practices, Plaintiff and California subclass members were injured and lost money or property, which would not have occurred but for the unfair and deceptive acts, practices, and omissions alleged herein, monetary damages from fraud and identity theft, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their personal information.

138.  CEREBRAL's violations were, and are, willful, deceptive, unfair, and unconscionable.

139.  Plaintiff and class members have lost money and property as a result

of CEREBRAL's conduct in violation of the UCL, as stated herein and above.

140.    By deceptively storing, collecting, and disclosing their personal information, CEREBRAL has taken money or property form Plaintiff and class members.

141.    CEREBRAL acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiff's and California subclass members' rights. Past data breaches put it on notice that its security and privacy protections were inadequate.

142.    Plaintiff and California subclass members seek all monetary and nonmonetary relief allowed by law, including restitution of all profits stemming from CEREBRAL's unfair, unlawful, and fraudulent business practices or use of their personal information; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief, including public injunctive relief.

## EIGHTH CAUSE OF ACTION
### (Invasion of Privacy)

**(Count 1 – Common Law Invasion of Privacy – Intrusion Upon Seclusion By Plaintiff and the Nationwide Class Against CEREBRAL)**

143.    Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

144.    To assert claims for intrusion upon seclusion, one must plead (1) that the defendant intentionally intruded into a matter as to which plaintiff had a reasonable expectation of privacy; and (2) that the intrusion was highly offensive to a reasonable person.

145.    CEREBRAL intentionally intruded upon the solitude, seclusion and private affairs of Plaintiff and class members by intentionally configuring their systems in such a way that left them vulnerable to unlawful disclosure to third parties, thus permitting unauthorized access to their systems, which compromised

Plaintiff's and class members' personal health information. Only CEREBRAL had control over its systems.

146.   CEREBRAL's conduct is especially egregious and offensive as they failed to have adequate security measures in place to prevent, track, or detect in a timely fashion unauthorized access to Plaintiff's and class members' personal information.

147.   At all times, CEREBRAL was aware that Plaintiff's and class members' personal health information in their possession contained highly sensitive and confidential personal information.

148.   Plaintiff and class members have a reasonable expectation of privacy in their personal health information, which also contains highly sensitive medical information.

149.   CEREBRAL intentionally configured their systems in such a way that stored Plaintiff's and class members' personal information to be left vulnerable to malware/ransomware attack and/or at risk to disclosure to unauthorized third parties without regard for Plaintiff's and class members' privacy interests.

150.   The disclosure of the sensitive and confidential personal information of thousands of consumers, was highly offensive to Plaintiff and class members because it violated expectations of privacy that have been established by general social norms, including by granting access to information and data that is private and would not otherwise be disclosed.

151.   CEREBRAL's conduct would be highly offensive to a reasonable person in that it violated statutory and regulatory protections designed to protect highly sensitive information, in addition to social norms. CEREBRAL's conduct would be especially egregious to a reasonable person as CEREBRAL publicly disclosed Plaintiff's and class members' sensitive and confidential personal information without their consent, to an "unauthorized person," i.e., third parties.

152.   As a result of CEREBRAL's actions, Plaintiff and class members have

suffered harm and injury, including but not limited to an invasion of their privacy rights.

153.  Plaintiff and class members have been damaged as a direct and proximate result of CEREBRAL's intrusion upon seclusion and are entitled to just compensation.

154.  Plaintiff and class members are entitled to appropriate relief, including compensatory damages for the harm to their privacy, loss of valuable rights and protections, and heightened stress, fear, anxiety and risk of future invasions of privacy.

### (Count 2 –Invasion of Privacy – Cal. Const. Art. 1, § 1 By Plaintiff and the California Subclass Against CEREBRAL)

155.  Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

156.  Art. I, § 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Art. I, § 1, Cal. Const.

157.  The right to privacy in California's constitution creates a private right of action against private and government entities.

158.  To state a claim for invasion of privacy under the California Constitution, a plaintiff must establish: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy; and (3) an intrusion so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of the social norms.

159.  CEREBRAL violated Plaintiff's and class members' constitutional right to privacy by collecting, storing, and disclosing their personal information in which they had a legally protected privacy interest, and in which they had a reasonable expectation of privacy in, in a manner that was highly offensive to

Plaintiff and class members, would be highly offensive to a reasonable person, and was an egregious violation of social norms.

160. CEREBRAL has intruded upon Plaintiff's and class members' legally protected privacy interests, including interests in precluding the dissemination or misuse of their confidential personal information.

161. CEREBRAL's actions constituted a serious invasion of privacy that would be highly offensive to a reasonable person in that: (i) the invasion occurred within a zone of privacy protected by the California Constitution, namely the misuse of information gathered for an improper purpose; and (ii) the invasion deprived Plaintiff and class members of the ability to control the circulation of their personal information, which is considered fundamental to the right to privacy.

162. Plaintiff and class members had a reasonable expectation of privacy in that: (i) CEREBRAL's invasion of privacy occurred as a result of CEREBRAL's security practices including the collecting, storage, and unauthorized disclosure of consumers' personal information; (ii) Plaintiff and class members did not consent or otherwise authorize CEREBRAL to disclosure their personal information; and (iii) Plaintiff and class members could not reasonably expect CEREBRAL would commit acts in violation of laws protecting privacy.

163. As a result of CEREBRAL's actions, Plaintiff and class members have been damaged as a direct and proximate result of CEREBRAL's invasion of their privacy and are entitled to just compensation.

164. Plaintiff and class members suffered actual and concrete injury as a result of CEREBRAL's violations of their privacy interests. Plaintiff and class members are entitled to appropriate relief, including damages to compensate them for the harm to their privacy interests, loss of valuable rights and protections, heightened stress, fear, anxiety, and risk of future invasions of privacy, and the mental and emotional distress and harm to human dignity interests caused by Defendant's invasions.

CLASS ACTION COMPLAINT

165.  Plaintiff and class members seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate Plaintiff and class members for the harm to their privacy interests as well as disgorgement of profits made by CEREBRAL as a result of its intrusions upon Plaintiff's and class members' privacy.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself, the nationwide class, and the California subclass, prays for the following relief:

1. An order certifying the nationwide class and California subclass as defined above pursuant to Fed. R. Civ. P. 23 and declaring that Plaintiff is proper class representative and appointing Plaintiff's counsel as class counsel;

2. Permanent injunctive relief to prohibit CEREBRAL from continuing to engage in the unlawful acts, omissions, and practices described herein;

3. Compensatory, consequential, general, and nominal damages in an amount to be proven at trial, in excess of $5,000,000;

4. Disgorgement and restitution of all earnings, profits, compensation, and benefits received as a result of the unlawful acts, omissions, and practices described herein;

5. Punitive, exemplary, and/or trebled damages to the extent permitted by law;

6. Plaintiff intends to amend this complaint to seek statutory damages on behalf of the California subclass upon expiration of the 30-day cure period pursuant to Cal. Civ. Code § 1798.150(b);

7. Statutory damages pursuant to Cal. Civ. Code § 56.36(b);

8. A declaration of right and liabilities of the parties;

9. Costs of suit;

10. Reasonable attorneys' fees, including pursuant to Cal. Civ. Pro. Code §

CLASS ACTION COMPLAINT

1   1021.5;

2   11. Pre- and post-judgment interest at the maximum legal rate;

3   12. Distribution of any monies recovered on behalf of members of the class or

4   the general public via fluid recovery or *cy pres* recovery where necessary

5   and as applicable to prevent Defendant from retaining the benefits of their

6   wrongful conduct; and

7   13. Such other relief as the Court deems just and proper.

8
9   Dated:      March 14, 2023           WUCETICH & KOROVILAS LLP

10                                        By:        /s/ Jason M. Wucetich

11                                        JASON M. WUCETICH
                                          Attorneys for Plaintiff
12                                        LYNDELL JOHNSON,
                                          individually and on behalf of
                                          all others similarly situated

CLASS ACTION COMPLAINT

## **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of herself and the putative class and subclass, hereby demands a trial by jury on all issues of fact or law so triable.

Dated:       March 14, 2023               WUCETICH & KOROVILAS LLP

                                                          By:          /s/ Jason M. Wucetich
                                                                      JASON M. WUCETICH
                                                                      Attorneys for Plaintiff
                                                                      LYNDELL JOHNSON,
                                                                      individually and on behalf of
                                                                      all others similarly situated

CLASS ACTION COMPLAINT